```
 1  ANDRÉ BIROTTE JR.
    United States Attorney
 2  CHRISTINE C. EWELL
    Assistant United States Attorney
 3  Chief, Criminal Division
    STEPHANIE YONEKURA McCAFFREY
 4  Executive Assistant United States Attorney
    (Cal. State Bar # 187131)
 5       1200 United States Courthouse
         312 North Spring Street
 6       Los Angeles, California 90012
         Telephone:  (213) 894-1092
 7       Facsimile:  (213) 894-1634
         Email: Stephanie.Yonekura-McCaffrey@usdoj.gov
 8
    Attorneys for Plaintiff
 9  UNITED STATES OF AMERICA
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | ) No. CR 08-746(A)-JFW |
|---|---|
| Plaintiff, | ) GOVERNMENT'S POSITION RE: DEFENDANT <br> ) <u>TERRAL TOOLE'S INITIAL RESPONSE TO</u> <br> ) <u>THE PRESENTENCE REPORT</u> |
| v. | ) |
| TERRAL TOOLE, | ) Sentencing Date: March 22, 2010 <br> ) Sentencing Time: 9:00 a.m. |
| Defendant. | ) Courtroom of the Honorable <br> ) John F. Walter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, hereby submits its Position Re: Defendant Terral Toole's Initial Response to the Presentence Report. This Response is based on the attached Memorandum of Points and Authorities, the case files and records in this case, the

///

///

///

Presentence Report, and any further evidence and argument that may be presented at any hearing in this matter.

DATED: March 15, 2010        Respectfully submitted,

                                    ANDRE BIROTTE JR.
                                    United States Attorney

                                    CHRISTINE C. EWELL
                                    Assistant United States Attorney
                                    Chief, Criminal Division


                                            /s/
                                    STEPHANIE YONEKURA McCAFFREY
                                    Executive Assistant United States
                                    Attorney

                                      Attorneys for the
                                      United States of America

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   INTRODUCTION

In Defendant's Initial Response to Presentence Report, defendant Terral Toole ("defendant") objects to the Presentence Report ("PSR") but cites no evidentiary support for his objections except his blanket denials (with the exception of his request for a downward departure based on alleged abuse).  Given the government's previously filed Sentencing Memorandum, many of defendant's objections are not at issue.  Specifically, the government believes that the loss calculations should only include the loss associated with the specific fraudulent property transactions to which he pleaded guilty.  Therefore, the applicable loss should be $941,343.

II.  ARGUMENT

   A.   Page 6, paragraph 11

Defendant objects to paragraph 11 of the PSR because he "denies that he was involved with defendant Cotton as stated." (Defendant's Initial Response, p. 2.)  The government is not arguing for the inclusion of the loss from fraudulent property transactions committed with Cotton.  Defendant admits that he was involved in a "scheme to fraudulently obtain loan proceeds on loans that were to be used to fund real estate transfers made to straw buyers."  (PSR, ¶ 11; Plea Agreement, ¶10(a)-(c).)  He simply denies being involved with Cotton to do so.

Defendant and Cotton committed mortgage fraud together.  On one of the properties to which defendant has pleaded guilty, 1 Plaza Avila, Lake Elsinore, California (Count 4), Cotton acted as the escrow company on that transaction.  (Exh. A, p. 9.)  As the

escrow agent on the transaction, Cotton disbursed the fraudulently obtained loan proceeds, including $70,500 to account of Bruno Guerra ("Guerra") at Wells Fargo Bank.[1] (Exh. B, pp. 11-12). Both defendant and Guerra have told the government that defendant controlled the Guerra Wells Fargo account. (Exh. C, p. 15; Exh. D, p. 22.)

    Defendant was arguably involved in the fraudulently obtained loans for properties that were not for sale – 5112 Lipizzan Place, Rancho Cucamonga, California ("Lipizzan") and 7069 Isle Court, Rancho Cucamonga, California ("Isle Court"). Three loan applications were submitted and approved in the name of "S.V." for Lipizzan and Isle Court properties. (PSR, ¶¶ 19b, 19c, 19d, and 20.) Each of those loan applications listed S.V.'s employer as Montajz Magazine, a company owned by defendant, and listed a monthly income, which she did not earn. (Exh. F, p. 36; Exh. G, p. 40; Exh. H, p. 46.) For two of the three loans submitted in S.V.'s name, Cotton disbursed $50,000 each time, for a total of $100,000 to the Guerra Wells Fargo account. (Exh. I, pp. 49,51.) Cotton has told the government that she obtained S.V.'s name and personal information from defendant. (Exh. E, p. 29.) A.M., a co-conspirator of Cotton, told the government that defendant confirmed the receipt of money from Cotton for providing S.V.'s name for use in the fraudulent loan documentation. (Exh. J, p. 56.) In addition, C.H., another Cotton associate, told the government that he overheard a telephone conversation between

---

[1] Exhibit B shows a deposit of $181,659.39 into the Orange Title Bank account which represents the proceeds of the Highsmith/Plaza Avila loan on 2/1/07 and the transfer of $70,500 to the Guerra account on 2/2/07.

Cotton and defendant on speaker in which Cotton told Toole that "she need[ed] a straw buyer," to which defendant responded that "nobody is gonna do anything without getting paid," but that "Vasquez was on board." When asked about his receipt of $170,500 from Cotton, defendant told the government that it was for purchase of stock in defendant's company. (Exh. K, p. 66.) As set forth in the PSR, defendant apparently has now told the Probation Officer that he only received $10,000 from Cotton but was unclear as to the reason. (PSR, ¶ 29.) Two possible explanations provided by defendant to the Probation Officer were (1) Cotton paid defendant for a real estate deal that he did with Cotton's boyfriend; or (2) Cotton paid defendant to set up two corporations for her, but he never did. (PSR, ¶ 29.)

The government has provided this information related to defendant's relationship with Cotton in the Lipizzan and Isle Court transactions for consideration as to the point within the applicable range to sentence defendant. For the reasons set forth in the government's Sentencing Memorandum concerning the change of plea colloquy, the government does not believe that the loss associated with the Lipizzan and Isle Court transactions should be attributed to defendant for purposes of guideline calculations.

  B. <u>Page 7, paragraph 16</u>

Defendant objects to paragraph 16 which describes the mortgage payments made by defendant on the fraudulently obtained loans. Defendant's objection must relate to the specifics given in the PSR regarding one of the mortgage payments made in connection with the scheme, specifically the fact that the funds

came from Cotton. Defendant has already admitted that he "made mortgage payments on the fraudulently obtained loans to prevent the financial lending institutions from discovering the fraud." (Plea Agreement, ¶ 10(o).) The source of the funds to make the mortgage payments is irrelevant for sentencing purposes.

C.  Page 7-8, ¶¶ 19b, 19c, 19d, and 20

Defendant objects to specific property transactions set forth in paragraphs 19b, 19c, and 19d and the overall loss amounts set forth in paragraph 20. The facts relating to those transactions are set forth in Section A above. The government is not arguing that defendant should be held responsible for the property transactions set for in paragraphs 19b, 19c, and 19d. However, the loss calculations for the fraudulent transactions to which defendant pleaded guilty are as follows:

| COUNT | LOSS | EXHIBIT |
|---|---|---|
| One | No Loss | |
| Two | $460,948 | A |
| Three | $184,952 | B |
| Four | $295,443 | C |
| TOTAL | $941,343 | |

The applicable loss is $941,343. In its Sentencing Memorandum, the government argued for a loss of 940,443. The actual loss amount does not change the sentencing guideline calculation, but it does change the restitution award.

Count Two relates to a fraudulently obtained loan for a property located at 22361 Loch Lomond Dr., Canyon Lake, California. The amount of the first mortgage on the Loch Lomond property was $460,000. (Exh. L, p. 72.) The first mortgage was

4

1 an interest only loan.  (Exh. L, p. 74.)  The amount of the
2 second mortgage on the Loch Lomond property was $115,000 (Exh. L,
3 p. 79.)  One payment of $1,046.22 was made on the second
4 mortgage.  (Exh. L, p. 81).  The second mortgage had an interest
5 rate of 10.375%.  (Exh. L, p. 79.)  Therefore, the monthly
6 interest payment was $994.27 ($115,000 multiplied by .10375 and
7 divided by 12.  (Exh. L, p. 79.)  The outstanding loan balance on
8 the second mortgage was $114,948 ($115,000 + 1,046.22 - $994.27).
9 The total outstanding loan balance of the fraudulently obtained
10 loans was $574,948.  The sales amount of the Loch Lomond property
11 was $114,000.  (Exh. L, p. 68.)  Thus, the loss associated with
12 the Loch Lomond property was $460,948 ($574,948-$114,000).
13     Count Three relates to a fraudulently obtained loan for a
14 property located at 1269 Sonora Street, San Bernardino,
15 California.  The outstanding balance on the first mortgage on the
16 Sonora property was $272,000.  (Exh. M, p.85.)  The outstanding
17 balance on the second mortgage on the Sonora property was $67,952
18 (Exh. M, p. 86.)  The total outstanding balances on fraudulently
19 obtained loans on Sonora was $339,952.  The sales amount of the
20 Sonora property was $155,000.  (Exh. M, p. 83.)  Therefore, the
21 loss associated with the Sonora property was $184,952 ($339,952-
22 $155,000).
23     Count Four relates to a fraudulently obtained loan for a
24 property located at 1 Plaza Avila, Lake Elsinore, California.
25 The outstanding balance on the first mortgage on the Plaza Avila
26 property was $449,534.  (Exh. N, p. 88.)  The outstanding balance
27 on the second mortgage on the Plaza Avila property was $114,909
28 (Exh. N, p. 89.)  The total outstanding balances on the

fraudulently obtained loans was $574,443.  The sales amount of the Plaza Avila property was $279,000.  (Exh. N, p. 87.) Therefore, the loss associated with the Plaza Avila property was $295,443 ($574.443-$279,000).

Based on the calculations set forth above, the applicable loss and restitution amounts are $941,343.

D.   Page 8, ¶¶ 19g and 19h

As set for in its Sentencing Position, the government is not arguing that defendant should be held responsible for the property transactions set for in paragraphs 19g and 19h.

E.   Page 8, ¶ 20.

Defendant disputes the loss amounts set forth in the PSR. The government believes that the applicable loss is $941,343 as set forth in Section C above.

F.   Page 9, ¶ 22.

The government is not arguing for the inclusion of the fraudulent property transaction set forth in paragraph 22. However, the facts regarding the Lipizzan and Isle Court loans submitted in S.V.'s name are set forth in Section A above.

G.   Page 10, ¶ 26

Defendant disputes the loss total set forth in the PSR.  The government believes that the applicable loss is $941,343 as set forth in Section C above.

1      H.   <u>Page 10, ¶ 29</u>

2      Defendant states that he intends to supplement his statement to Probation; however, no supplement has been received to date.

4      I.   <u>Page 12, ¶ 43</u>

5      Defendant states that he disputes the offense level computation with no specifics. As set forth in its Sentencing Memorandum, the government believes that the applicable guideline calculations to be as follows:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Special Offense Characteristics: | 14 | U.S.S.G. § 2B1.1(b)(1)(H) (Loss of $941,343) |
| | 2 | U.S.S.G. § 2B1.1(b)(9) (Sophisticated Means) |
| Adjustments: | 3 | U.S.S.G. § 3B1.1 (Manager/Supervisor) |
| | -3 | U.S.S.G. § 3E1.1 (Acceptance of Responsibility) |
| Total Adjusted Offense Level: | 23 | |

19      J.   <u>Page 27, ¶ 150</u>

20      Defendant argues for a downward departure based on alleged abuse. The government does not dispute the report; however, the government believes that such information should be considered in evaluating defendant's history and characteristics and that such information is offset by the defendant's long criminal history.

## III. CONCLUSION

The government respectfully submits that a sentence of imprisonment at the high-end of the guidelines range is sufficient, but not greater than necessary, to punish defendant

for his misconduct, promote respect for the law, protect the public, and deter defendant and others from committing similar crimes in the future. Accordingly, the government respectfully requests that the Court sentence defendant to a term of 115 months imprisonment, a three-year period of supervised release, and order the defendant to pay mandatory restitution of $941,343 and a special assessment of $800.

DATED: March 15, 2010                Respectfully submitted,

                                     ANDRE BIROTTE JR.
                                     United States Attorney

                                     CHRISTINE C. EWELL
                                     Assistant United States Attorney
                                     Chief, Criminal Division


                                     _____/s/_____
                                     STEPHANIE YONEKURA McCAFFREY
                                     Executive Assistant United States
                                     Attorney

                                        Attorneys for the
                                        United States of America